DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
KENYON HARBISON (BAR NO. 260416)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        jdelcastillo@allenmatkins.com
        kharbison@allenmatkins.com

Attorneys for Plaintiff
KRISTEN A. JANULEWICZ, RECEIVER

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN A. JANULEWICZ, RECEIVER,<br><br>            Plaintiff,<br><br>     v.<br><br>PRIVATE PLACEMENT CAPITAL NOTES II, LLC; ANTHONY (TONY) HARTMAN; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. **'16CV0578 BEN DHB**<br><br>COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF |

Plaintiff Kristen A. Janulewicz (the "Receiver"), the Court-appointed permanent receiver for Total Wealth Management, Inc. ("Total Wealth"), and its subsidiaries and affiliates, including but not limited to Altus Capital Management, LLC (collectively, the "Receivership Entities" or "Entities"), hereby brings the following Complaint against the above-captioned Defendants and, on behalf of the Receivership Entities, alleges as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter under 28 U.S.C. Sections 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this action arises from a common nucleus of operative facts as, and is

1   substantially related to the original claims in, the Securities and Exchange

2   Commission's (the "Commission") pending enforcement action styled *SEC v. Total*

3   *Wealth Management, Inc., et al.*, USDC, S.D. Cal. Case No. 15-cv-226 BAS (DHB)

4   (the "Enforcement Action").

5         2.     This Court may exercise personal jurisdiction over the above-captioned

6   Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A).

7         3.     Venue in the Southern District of California is proper under 28 U.S.C.

8   Section 1391 because this action is an ancillary proceeding to the Enforcement

9   Action and because the Receiver was appointed in this District pursuant to the

10  Court's previously entered "(1) Preliminary Injunction, Appointment of a Permanent

11  Receiver, and Related Orders; and (2) Order Vacating Hearing on Preliminary

12  Injunction" (the "Appointment Order"), which specifically authorized the Receiver

13  "to institute, pursue, and prosecute all claims and causes of action of whatever kind

14  and nature which may now or hereafter exist as a result of the activities of" the

15  Receivership Entities.

16                              **PARTIES**

17        4.     The Receiver is the duly appointed permanent receiver for the

18  Receivership Entities.  The Entities include, but are not limited to, Total Wealth

19  Management, Inc. ("Total Wealth"); Altus Capital Management, LLC ("Altus

20  Capital"); Altus Capital Opportunity Fund ("ACOF"); and the so-called Altus Series

21  Funds:  Altus Focused Growth Portfolio Series, LP, Altus Income Portfolio Series,

22  LP; Altus Conservative Portfolio Series, LP; Altus Moderate Growth Portfolio

23  Series, LP; Altus Moderate Portfolio Series, LP; and Altus Growth Portfolio Series,

24  LP (together with ACOF, the "Altus Funds").  Altus Capital is the general partner of

25  the Altus Funds, and Total Wealth is their investment adviser.  Among other things,

26  the Appointment Order calls for the Receiver to recover and marshal, for the benefit

27  of creditors and investors in the Receivership Entities, any and all assets which were

28  owned, leased, occupied, or otherwise controlled by the Receivership Entities, or

1  were otherwise purchased with assets of the Receivership Entities.  The Receiver

2  holds exclusive authority and control over the assets of the Receivership Entities,

3  including over the causes of action alleged herein, over which this Court has

4  ancillary and supplemental jurisdiction.

5      5.      On information and belief, Defendant Private Placement Capital Notes

6  II, LLC ("PPCN") is a Colorado limited liability company, formed in 2008, with its

7  principal place of business listed as 8547 East Arapahoe Road, J192, Greenwood

8  Village, Colorado 80112 (the "PPCN Address").  The PPCN Address is a mail drop-

9  box, not a physical office, and no PPCN personnel or records are located at the

10  PPCN Address.

11      6.      On information and belief, Defendant Anthony (Tony) Hartman, an

12  individual who was the subject of a 2011 securities fraud consent order in the State

13  of Colorado, is PPCN's principal and a resident of Colorado and Texas.  As detailed

14  below, and on information and belief, Defendant Tony Hartman is an alter-ego of

15  PPCN.

16      7.      The Receiver is ignorant of the true names and capacities, whether

17  individual, corporate, associate or otherwise, of Doe Defendants 1 through 10,

18  inclusive.  On information and belief, each fictitiously named Defendant was in

19  some way responsible for, participated in or contributed to the matters and things

20  complained of herein, and in some fashion, has legal responsibility therefor.  When

21  the identity and exact nature of such fictitious Defendants' responsibility for,

22  participation in and contribution to the matters and things herein alleged is

23  ascertained, the Receiver will seek leave to amend this Complaint and all

24  proceedings herein to set forth the nature of these fictitious Defendants' identities.

25

26

27

28

# FACTUAL ALLEGATIONS

**I.    The Establishment Of The Receivership Entities And Their Loan Investment Activities.**

8.    As alleged by the Commission in the Enforcement Action, Total Wealth registered as an investment adviser with the Commission in 2009.  Total Wealth's sole owner and chief executive officer was Jacob Cooper ("Cooper"), an individual Defendant in the Enforcement Action.

9.    In late 2009, Cooper organized ACOF to allow Total Wealth's investor clients to pool their money to invest in securities and other investments, and to meet the mandatory minimum investment requirement for investment funds for which they might not otherwise qualify.

10.    In 2011, Cooper established the Altus Funds.  As with ACOF, the purpose of the Altus Funds was to allow investor clients to pool their money to invest in securities and other investments, and to meet the mandatory minimum investment requirement for investment funds for which they might not otherwise qualify.

11.    The Altus Funds invested in a variety of different investments, including at least:  (1) Life's Good, Inc., which was determined by the United States District Court for the Eastern District of Pennsylvania to be a Ponzi-like investment scheme and its principal, Robert Stinson, Jr., a recidivist offender, sentenced to 33 years in prison; (2) Aegis Holding Company, Aegis Atlantic, and Aegis Retail (collectively "Aegis"), in connection with which the Altus Funds experienced losses in excess of $18 million; and (3) PPCN, into which the Altus Funds invested at least $24,000,000, in the aggregate, in the form of promissory notes.  The Altus Funds made their investments, again, in the form of loans memorialized by promissory notes, in PPCN from approximately December 2007 to February 2014.

12.    On information and belief, the Altus Funds' investment in PPCN constitutes at least 70% of all funds invested in PPCN.  On information and belief,

1  the Receivership Entities were insolvent at the time the Altus Funds invested in

2  PPCN, or were rendered insolvent by their investment.

3  **II.    PPCN's Solicitation Of Investment From The Altus Funds.**

4      13.    PPCN solicited investments through a variety of means, including the

5  dissemination of Private Placement Memoranda ("PPMs") and other written

6  solicitations.  These PPMs and solicitations were provided to Cooper, Total Wealth,

7  and the Altus Funds in order to solicit investment from the Altus Funds.

8      14.    On information and belief, in its PPMs and other written solicitations,

9  PPCN represented that its business consisted of making commercial hard money

10  loans, or "bridge loans," as well as short-term investments, and the acquisition of

11  distressed and commercial real property, and loans sold by the Federal Deposit

12  Insurance Corporation.

13      15.    On information and belief, in written solicitations provided to Cooper,

14  Total Wealth, and the Altus Funds, PPCN represented that all loans made by PPCN

15  were backed by collateral valued in the amount of at least 200% of the value of its

16  loans.

17      16.    On information and belief, PPCN further represented to Cooper, Total

18  Wealth, and the Altus Funds that its real estate and other holdings included, among

19  other things, a resort known as Melrose on the Beach (the "Melrose Resort"), a

20  distressed golf resort on Daufuskie Island, off the coast of South Carolina, and Good

21  Earth Minerals LLC ("GEM"), a start-up mining enterprise in Utah.  In an interview

22  with the Receiver on or around early March 2015, Defendant Hartman indicated to

23  the Receiver that PPCN owned equity interests in the Melrose Resort and GEM.

24      17.    As described in the PPMs, investments in PPCN were accomplished

25  through the purchase of notes (the "Notes"), styled as promissory notes.  The Altus

26  Funds entered into at least 221 Notes with PPCN.  The PPMs and other written

27  solicitation materials delivered to Total Wealth and the Altus Funds provided that

28  the Notes would bear interest at an annual rate of 12.5%, to be paid semi-annually.

18.     The Notes, again, styled as promissory notes, further provided that they would have a term of 5 years from the date of purchase, after which note holders (investors) could redeem the Notes for a full repayment of principal.

19.     Notably, however, the Notes further provided that, within 6 months of receipt of a redemption request, PPCN would have to exercise only "diligent efforts" to repay any outstanding principal, and then only to the extent that PPCN had actually made money from its lending or other investment activities.

## III.    PPCN's Investment Holdings.

20.     On information and belief, despite the fact that it raised investments in the aggregate amount of more than $24,000,000 from the Altus Funds, the income derived from PPCN's investments was insufficient to satisfy PPCN's promise to pay investors, including the Altus Funds, annual interest at a rate of 12.5%.

21.     On information and belief, PPCN does not directly own an equity interest in the Melrose Resort.  Instead, PPCN owns a partial interest in a limited liability company that itself holds a fractional interest in the Melrose Resort.

22.     On information and belief, PPCN does not own directly own an equity interest in GEM, but, as with the Melrose Resort, owns only a fractional or contingent, limited interest in GEM.

## IV.    PPCN's Payment Of Interest And The Receiver's Redemption Request.

23.     As detailed above, while PPCN appears to have made some bridge loans, the income derived from such loans, if any, is insufficient to satisfy PPCN's interest payment obligations to investors, including the Altus Funds.  Nonetheless, PPCN has paid and credited interest to the Altus Funds, characterized as returns on investment.  Notably, however, PPCN has made no interest payments to the Altus Funds since December 2014, which payment was additionally only a fraction of the interest owed at that time.

24.     On information and belief, the Melrose Resort is not generating any net income.  In other words, it is a "negative cash flow" business, meaning that PPCN's interest in the Melrose Resort is likewise not generating any net income.

25.     On information and belief, despite the fact that the Melrose Resort is a "negative cash flow" business, and not generating any net income, PPCN has paid and credited interest to the Altus Funds, characterized as returns on investment.

26.     On information and belief, while GEM had secured permits to commence mining operations, no operations have commenced.  Accordingly, GEM is, on information and belief, likewise not generating any net income, and represents another "negative cash flow" business.  Nonetheless, PPCN has paid and credited interest to the Altus Funds, characterized as returns on investment.

27.     On information and belief, PPCN has paid the Altus Funds a total of approximately $4,570,000 in interest and has credited the Altus Funds with at least an additional $11,200,000 in interest, meaning that such interest was not actually paid, but merely added to the balance of the Altus Funds' investments.  As of the date of this Complaint, PPCN reports that the value of the Altus Funds' investment via the Notes, including such credited interest, is at least $34,100,000, in the aggregate.

28.     On information and belief, at least $4,500,000 of the interest paid to the Altus Funds from 2012 through 2014, and characterized by PPCN as return on investment, was paid from funds obtained by PPCN from later, non-Altus Fund investors.  In this sense, PPCN's interest payment practices are suggestive of a Ponzi-like investment scheme in that they reflect the payment of interest to older investors from funds obtained from newer investors.

29.     On information and belief, PPCN failed to disclose to Total Wealth and the Altus Funds the adverse financial condition of its investments and made material misrepresentations regarding the value of its investments.

30.     On information and belief, PPCN failed to adequately disclose the risks associated with the majority of its investment holdings, which, contrary to its stated goals, consisted principally of highly speculative and/or fractional interests in various investments.

31.     In accordance with the terms of the Notes, the Receiver sent PPCN and its counsel a written redemption request relating to at least $16,000,000 in Notes that had reached or exceeded their 5-year maturity horizon.  As of the date of this Complaint, PPCN has failed to respond to the Receiver's redemption request and has not returned any of the requested amount to the Receiver.

## V.     PPCN Is Defendant Hartman's Alter-Ego.

32.     On information and belief, Defendant Tony Hartman diverted PPCN funds or assets in a manner undisclosed to PPCN's investors and for his own benefit. Among other things, on information and belief, between January 2009 and February 2015 Defendant Hartman caused PPCN to transfer at least $312,000 to entities wholly owned and controlled by Defendant Hartman.  This diversion of funds was damaging to PPCN's investors and creditors, including the Altus Funds.

33.     On information and belief, PPCN did not maintain adequate corporate records to support its actions.

34.     On information and belief, and as evidenced by PPCN filings with the Commission, Defendant Hartman is the beneficial owner, Executive Officer, and Managing Partner of PPCN.  As such, Defendant Hartman exercised full dominion and control over PPCN and its operations, with no significant oversight.

35.     On information and belief, Defendant Hartman is the only director, manager, or executive officer of PPCN.

36.     On information and belief, PPCN is severely undercapitalized as a consequence of, in part, its interest-payment practices, as directed by Defendant Hartman, when compared to the significant liabilities owed by PPCN to its investors and/or creditors, including the Altus Funds.  Indeed, in or about March 2015,

1  Defendant Hartman represented to the Receiver that PPCN had insufficient cash on
2  hand to meet an existing equity investment obligation.

3       37.    On information and belief, Defendant Hartman deliberately failed to
4  disclose funds transfers made by PPCN to entities under his control, or for his own
5  personal benefit.

6       38.    As a consequence of the above, and other facts to be discovered, there
7  exists a sufficient unity of interest between PPCN and Defendant Hartman such that
8  the separate personalities of the two do not exist, and it would be inequitable to treat
9  the actions of PPCN as those of PPCN alone.

10                      **COUNT I – FRAUD**

11                 **(as against all Defendants)**

12       39.    The Receiver incorporates herein each and every allegation contained
13  in Paragraphs 1 through 38, inclusive, set forth above.

14       40.    On information and belief, PPCN and Defendant Hartman made false
15  representations to Total Wealth and the Altus Funds about material facts in order to
16  induce them to invest in PPCN.  On information and belief, these material
17  misrepresentations included, but are not limited to:

18            a.    Claiming that PPCN's principal business consisted principally of
19  making bridge loans;

20            b.    Claiming that PPCN's bridge loans were backed by collateral
21  valued at 200% of the value of the loans;

22            c.    Claiming that PPCN's bridge loans and other business and
23  investments, including the Melrose Resort and GEM investments, generated an
24  income stream sufficient to satisfy its 12.5% annual interest payment obligations on
25  the Notes, along with the return of all principal;

26            d.    Claiming that PPCN would return its investors' principal upon
27  the maturity of their Notes, upon written request; and

28

e.      Claiming that interest paid to investors, including the Altus Funds, reflected returns on investment, rather than payments received from newer investors or new debt.

41.      On information and belief, PPCN and Defendant Hartman knew the representations, including those specifically identified in Paragraph 40, above, to be false.

42.      On information and belief, PPCN and Defendant Hartman made the false representations, including those specifically identified in Paragraph 40, above, intentionally, with the intention that they would be acted upon, and in order to defraud the Altus Funds, including by causing them to invest in PPCN.

43.      On information and belief, Total Wealth and the Altus Funds were ignorant of the falsity of these representations and justifiably and reasonably relied on the false representations of PPCN and Defendant Hartman, and based on those representations the Altus Funds invested at least $24,000,000 with PPCN.

44.      On information and belief, the Altus Funds, as a result of their and Total Wealth's reasonable reliance on PPCN's and Defendant Hartman's false representations, have suffered damages in the amount of at least approximately $20,000,000, as a consequence of their investment in PPCN, in an amount to be proven at trial.

## COUNT II – BREACH OF CONTRACT

### (as against PPCN)

45.      The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 44, inclusive, set forth above.

46.      The Notes represent contracts between the Altus Funds and PPCN. Specifically, the Notes memorialize an agreement by the Altus Funds to invest in PPCN in exchange for the payment of 12.5% annual interest, to be paid semi-annually, and the return of all outstanding principal and interest upon the maturity of the Notes.  Section II of the Notes provides, in pertinent part, that "Interest shall be

payable under this Note semi-annually, on the first business day after January 15 and July 15 of each calendar year during the term hereof.  The amount of interest payable hereunder shall be up to 12.5% per annum."  Section IV of the Notes provides, in pertinent part, that "[t]his Note has a term of five years from the date first set forth above.  After the term, always subject to the provisions of Section III above, all amounts due hereunder, including interest, will be due and payable within six months after the date that Maker [PPCN] receives a written payoff request from Holder[.]"  A true and correct, redacted copy of a Note substantially identical to the other Notes is appended hereto as **Exhibit A**, and incorporated herein by reference.

47.    On information and belief, despite its interest payment obligations, PPCN has failed to make any interest payments whatsoever to the Altus Funds since at least December 2014, and has breached its contractual obligations.

48.    The Altus Funds have performed all of their obligations under the Notes.

49.    As reflected in Paragraph 31, above, the Receiver issued a written redemption request to PPCN for at least $16,000,000 in matured Notes.  As of the date of this Complaint, PPCN has failed to make any payment to the Receiver in accordance with the terms of the Notes and the Receiver's redemption request, and has accordingly breached its contractual obligations.

50.    As a consequence, the Altus Funds have suffered damages in the amount of at least $16,000,000, in an amount to be proven at trial.

## COUNT III – UNJUST ENRICHMENT

### (as against all Defendants)

51.     The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 50, inclusive, set forth above.

52.     As described in more detail above, the Altus Funds invested at least $24,000,000 in PPCN, in reliance on false representations from PPCN and Hartman regarding PPCN's business and investment activities, conferring a benefit upon PPCN and Defendant Hartman, at the expense of the Altus Funds, of which approximately $4 million was paid back, as purported interest.

53.     PPCN did not receive the Altus Funds' investment in good faith, and the Altus Funds received no equivalent value or consideration in exchange for their investment.

54.     The outstanding, aggregate balance owed by PPCN to the Altus Funds under the Notes, inclusive of interest, is at least $34,100,000.

55.     PPCN and its alter-ego, Defendant Hartman, have been unjustly enriched in the amount of at least approximately $20,000,000, in an amount to be proven at trial, which amount is subject to immediate disgorgement to the Receiver.

## COUNT IV – DECLARATORY RELIEF

### (as against PPCN)

56.     The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 55, inclusive, set forth above.

57.     An actual controversy has arisen and now exists between the Altus Funds and PPCN concerning their respective rights and duties in connection with the Notes, especially since PPCN and Defendant Hartman have ignored the Receiver's pending redemption request, the terms of certain of the Notes are as yet unexpired, and PPCN continues to retain the Altus Funds' money.  The Altus Funds contend that their investment in PPCN, as memorialized by the Notes, occurred on the basis of false representations and a false and illusory repayment promise, such

1  that PPCN effectively excused itself from ever making an actual repayment on the

2  Notes, meaning the Notes were entered into without consideration. On information

3  and belief, PPCN disputes this contention.

4       58.    The Receiver, on behalf of the Altus Funds, therefore desires a judicial

5  determination that the Notes are subject to rescission and that all funds invested by,

6  and due and owing to, the Altus Funds in connection with the Notes should be

7  immediately disgorged to the Receiver.

8  **COUNT V – DECLARATORY RELIEF**

9  **(as against all Defendants)**

10       59.    The Receiver incorporates herein each and every allegation contained

11  in Paragraphs 1 through 58, inclusive, set forth above.

12       60.    An actual controversy has arisen and now exists between the Altus

13  Funds, on the one hand, and PPCN and Defendant Hartman, on the other hand,

14  concerning the issue of whether Defendant Hartman is the alter-ego of PPCN, given

15  his use of PPCN funds for his personal benefit, PPCN's undercapitalization, and the

16  other factors identified in Paragraphs 32 through 38, above.

17       61.    The Receiver, on behalf of the Altus Funds, therefore desires a judicial

18  determination that the Defendant Hartman is the alter-ego of PPCN and,

19  accordingly, that Defendant Hartman is jointly and severally liable to the Receiver,

20  on behalf of the Altus Funds, for any and all damages suffered by the Altus Funds,

21  and for all amounts owed to the Altus Funds arising from or in connection with their

22  investment in PPCN.

23  **COUNT VI – FRAUDULENT TRANSFER**

24  **(as against PPCN)**

25       62.    The Receiver incorporates herein each and every allegation contained

26  in Paragraphs 1 through 61, inclusive, set forth above.

27       63.    On information and belief, the Altus Funds invested, in the aggregate,

28  more than $24 million in PPCN.

1    64.    On information and belief, neither the Altus Funds specifically nor the

2    Receivership Entities generally received any reasonably equivalent value in

3    exchange for their investment.

4    65.    On information and belief, at the time the Altus Funds invested in

5    PPCN, they were engaged in or about to engage in business or transactions for

6    which their remaining assets were unreasonably small in relation to the business or

7    transaction.

8    66.    On information and belief, at the time the Altus Funds invested in

9    PPCN, the Altus Funds specifically, and the Receivership Entities generally, were or

10   became insolvent.

11   67.    On information and belief, at the time the Altus Funds invested in

12   PPCN, the Altus Funds specifically, and the Receivership Entities generally,

13   intended to incur, or believed or reasonably should have believed that they would

14   incur debts beyond their ability to pay as they became due.  Accordingly, the Altus

15   Funds' investments in PPCN affirmatively hindered, delayed, and defrauded their

16   collective creditors.

17   **PRAYER FOR RELIEF**

18   WHEREFORE, the Receiver prays for judgment against Defendants as

19   follows:

20   **On Count I:**

21   (a)    For a judgment against Defendants PPCN and Hartman, jointly and

22   severally, in an amount of at least $20,000,000, plus punitive damages, which

23   amounts may be amended based on proof at trial; and

24   (b)    For such other and further relief as the Court may deem proper.

25   **On Count II:**

26   (a)    For a judgment against Defendant PPCN in an amount of at least

27   $16,000,000, which amount may be amended based on proof at trial; and

28   (b)    For such other and further relief as the Court may deem proper.

**On Count III:**

(a)    For a judgment against Defendants PPCN and Hartman, jointly and severally, in an amount of at least $20,000,000, which amount may be amended based on proof at trial;

(b)    For an order directing Defendants PPCN and Hartman to immediately disgorge to the Receiver the amount of all funds they received from the Altus Funds, in and amount of at least $20,000,000, which amount may be amended based on proof at trial, plus prejudgment interests and costs; and

(c)    For such other and further relief as the Court may deem proper.

**On Count IV:**

(a)    For a judgment declaring all Notes held by the Altus Funds to be rescinded; and

(b)    For an order directing Defendant PPCN to immediately disgorge to the Receiver the amount of all funds originally invested pursuant to the Notes, and due and owing thereunder, in and amount of at least $20,000,000, which amount may be amended based on proof at trial, plus prejudgment interests and costs; and

(c)    For such other and further relief as the Court may deem proper.

**On Count V:**

(a)    For a judgment declaring Defendant Hartman to be the alter-ego of PPCN and, accordingly, jointly and severally liable to the Receiver for any and all damages and other amounts owed by PPCN; and

(b)    For such other and further relief as the Court may deem proper.

**On Count VI:**

For a judgment against Defendant PPCN in an amount of at least $20,000,000, which amount may be amended based on proof at trial;

(b)    For an order directing Defendant PPCN immediately to disgorge to the Receiver the amount of all funds it received from the Altus Funds, in and amount of

1  at least $20,000,000, which amount may be amended based on proof at trial, plus

2  prejudgment interests and costs; and

3        (c)    For such other and further relief as the Court may deem proper.

4

5  Dated:  March 7, 2016           ALLEN MATKINS LECK GAMBLE

6                      MALLORY & NATSIS LLP
           DAVID R. ZARO

7             JOSHUA A. DEL CASTILLO
           KENYON HARBISON

8

9             By:      /s/    *Kenyon Harbison*
               KENYON HARBISON

10                 Attorneys for Plaintiff
               KRISTEN A. JANULEWICZ,

11                 RECEIVER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28