# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. SEAMAN,<br><br>                      Plaintiff,<br><br>   v.<br><br>PRIVATE PLACEMENT CAPITAL NOTES II, LLC; ANTHONY (TONY) HARTMAN; and DOES 1 through 10, inclusive,<br><br>                      Defendants. | Case No. 16-cv-00578-BAS-DHB<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

Before the Court is Defendants' motion to compel arbitration and stay the case, or in the alternative, to transfer venue. (ECF No. 11.) For the reasons set forth below, the motion to compel is granted in part. Arbitration proceedings will be initiated in the Southern District of California, and the Court will stay the case pending the completion of arbitration.

## BACKGROUND

**A.     The Total Wealth Management Receivership Proceeding**

This case stems from a related SEC enforcement action ("Enforcement Action") brought against Total Wealth Management, Inc. ("TWM") and investment adviser Jacob Cooper, alleging fraud in violation of Sections 206(1), (2), and (4) of

– 1 –

the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-6(1), (2), and (4).[1] In the Enforcement Action, this Court issued a preliminary injunction against TWM and Cooper, and appointed Kristen Janulewicz permanent receiver of TWM and its subsidiaries and affiliates, including Altus Capital Management, LLC and the Altus Funds[2] (collectively, the "Receivership Entities" or "Entities"). The appointment order calls for the Receiver to recover, for the benefit of creditors and investors in the Receivership Entities, any and all assets that were owned by, or purchased with assets of, the Receivership Entities. *See* Preliminary Injunction and Appointment Order, *SEC v. Total Wealth Management, Inc., et al.*, No. 15-cv-00226-BAS-DHB (S.D. Cal. Feb. 12, 2015), ECF No. 8.

On February 23, 2016, the Court authorized the Receiver to bring the instant claim on behalf of the Receivership Entities, including the Altus Funds, against Defendant Private Placement Capital Notes II, LLC ("PPCN") and Anthony Hartman, the beneficial owner and managing partner of PPCN. Pursuant to this authority, on March 7, 2016 Plaintiff Receiver Kristen Janulewicz brought this claim for damages and declaratory relief against PPCN and Hartman, alleging fraud, breach of contract, unjust enrichment, and fraudulent transfer. (Compl. ECF No. 1.) On June 7, 2016, Thomas Seaman was substituted as permanent receiver of the Receivership Entities, and subsequently as plaintiff in the instant case.

The Receiver alleges that from approximately December 2007 to February 2014, the Altus Funds invested at least $24,000,000 in Defendant PPCN in the form of promissory notes. (*Id.* ¶¶ 8–11.) The Receiver alleges that the Altus Funds'

---

[1] *See* Complaint, *SEC v. Total Wealth Management, Inc., et al.*, No. 15-cv-00226-BAS-DHB (S.D. Cal. Feb. 4, 2015), ECF No. 1.

[2] The Altus Funds, which were organized by Cooper to allow investors to pool their funds, consist of the Altus Capital Opportunity Fund and the so-called Altus Series Funds: the Altus Conservative Portfolio Series, LP, the Altus Growth Portfolio Series, LP, the Altus Focused Growth Portfolio Series, LP, the Altus Income Portfolio Series, LP, the Altus Moderate Growth Portfolio Series, LP, and the Altus Moderate Portfolio Series. (Compl. ¶ 4.)

investment constitutes at least 70 percent of all funds invested in PPCN, and that the Receivership Entities were insolvent at the time the Altus Funds invested in PPCN, or were rendered insolvent by the Altus Funds' investment. (*Id.* ¶ 12.)

According to the Complaint, PPCN solicited investments from the Altus Funds through, among other things, the dissemination of private placement memoranda ("PPM") and other written solicitations. (*Id.* ¶ 13.) PPCN represented that its business consisted of making commercial hard money loans and acquiring distressed and commercial real property. (*Id.* ¶ 14.) The PPMs explained that investments in PPCN were made through the purchase of promissory notes (the "Notes"). According to the Receiver, the Altus Funds purchased at least 221 Notes with PPCN. PPCN represented that the Notes would bear interest at an annual rate of 12.5 percent, to be paid semi-annually over a five-year term, after which investors could redeem the Notes for full repayment of principal. (*Id.* ¶¶ 17, 18.)

The Receiver alleges that despite raising $24,000,000 from the Altus Funds, the income derived from PPCN's investments was insufficient to satisfy PPCN's promise to pay investors annual interest at the agreed-upon rate of 12.5 percent. (*Id.* ¶ 20.) The Receiver claims that PPCN has paid the Altus Funds a total of approximately $4,570,000 in interest, and that the value of the Altus Funds' investment via the Notes, including "credited interest" (i.e., interest credited but not paid) is at least $34,100,000 in the aggregate. (*Id.* ¶ 27.)

In accordance with the terms of the Notes, the Receiver sent PPCN a written redemption request relating to at least $16,000,000 in Notes that had reached or exceeded their five-year maturity date. (*Id.* ¶ 31) PPCN failed to respond, and has not returned any of the requested amount to the Receiver. The Receiver alleges that Defendants made false representations to TWM and to the Altus Funds to induce them to invest in PPCN; that PPCN breached its contractual obligations under the Notes to pay principal and interest upon maturity; that Defendants were unjustly enriched by their fraudulent conduct; and that the investments were fraudulent

– 3 –

transfers. (*Id.* 9–14.) The Receiver seeks actual damages of at least $20,000,000, punitive damages, and a declaratory judgment rescinding the Notes and ordering disgorgement of funds invested in the Notes by the Altus Funds.

**B.     The Subscription Agreement and Arbitration Clause**

After the Receiver filed suit, Defendants PPCN and Hartman filed the instant motion to compel arbitration and stay the action, or in the alternative, to transfer venue. (Mot. to Compel, ECF No. 11.) Defendants argue that the Notes purchased by the Altus Funds are governed by a Purchase Questionnaire and Notice Purchase Agreement (together, the "Subscription Agreement"), which contain identical arbitration clauses. That Arbitration Clause provides:

> **17.     Arbitration**
>
> Note Purchaser further agrees that any dispute regarding this Agreement or Note Purchaser's investment in the Company [i.e., PPCN] . . . including any claim which is made against any placement agent or broker-dealer involved in the offer or sale of the Note, shall be resolved by arbitration which shall be the sole forum for resolution of any such disputes. Unless otherwise agreed by the parties, any such proceedings shall be brought in Greenwood Village, Colorado pursuant to the Rules and Code of Arbitration of the America [sic] Arbitration Association, except that if a *bona fide* claim is made against the Company, and a placement agent or broker-dealer is named in connection with such claim, then such claim shall be brought pursuant to the Rules and Code of Arbitration of the National Association of Securities Dealers, Inc.

(Mot. to Compel, Exh. 1, 1-54, ECF No. 11-3.)

The Subscription Agreements also contain a forum selection clause that provides:

> **18. Governing Law; Venue**
>
> This Agreement shall be governed by, and construed in accordance with, the substantive laws of the State of Colorado without reference to Colorado conflict or choice of law provisions. Actions or proceedings litigated in connection with this Agreement, if any, shall be conducted exclusively in the state and federal courts located in the County of Arapahoe, State of Colorado.

1  (Mot. to Compel, Exh. 1, 1-54, ECF No. 11-3.)

2  Citing the Arbitration Clause, Defendants filed a motion to compel arbitration, requesting the Court to compel arbitration in Colorado, or transfer the case to Colorado pursuant to the forum selection clause. The Receiver opposes, arguing that although the Subscription Agreements contain an Arbitration Clause, the Notes themselves do not, and that it would be unconscionable to bind the Receiver to an arbitration agreement that does not appear on the face of the Notes. (ECF No. 14.) The Receiver also contends that forcing the Receiver to litigate or arbitrate the claims in Colorado would increase the costs and burden on the Receiver and the receivership estate, ultimately harming creditors and the defrauded investors. (*Id.*)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). An arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (citation omitted).

A party to an arbitration agreement may bring a motion in federal district court to compel arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. In deciding whether to compel arbitration, a court generally must determine two threshold issues of arbitrability: (1) whether there is a valid agreement to arbitrate, and (2) whether the agreement encompasses the dispute at issue. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). If there is a valid agreement to arbitrate, and that agreement covers the dispute, the court must compel

arbitration. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

Threshold issues of arbitrability are presumptively for the district court to decide. *See Martin v. Yasuda*, 829 F.3d 1118, 1122–23 (9th Cir. 2016) (citations omitted). However, parties can delegate the power to decide arbitrability to the arbitrator through "clear and unmistakable" evidence of agreement to do so. *Brennan*, 796 F.3d at 1130. In determining whether the parties delegated arbitrability to the arbitrator, the court applies federal arbitrability law "absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011) (citation omitted).

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citation omitted). A court must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "doubts should be resolved in favor of coverage." *AT&T Tech, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

## DISCUSSION

### A.   Delegation of Arbitrability

The Court first addresses who—an arbitrator or the Court—should resolve the parties' disagreement concerning the scope and validity of the Arbitration Clause.[3] The Receiver asks the Court to find that the Arbitration Clause is either inapplicable to the dispute at issue or unenforceable due to unconscionability. Defendants emphasize that the parties agreed to arbitrate *all* disputes regarding the Subscription

---

[3] Where, as here, the parties have not provided clear and unmistakable evidence of agreement to apply non-federal arbitrability law, the question of arbitrability is determined by federal law. Nonetheless, even if the Court applied Colorado state law, the analysis would be the same. *See Ahluwalia v. QFA Royalties, LLC*, 226 P.3d 1093, 1098–99 (Colo. 2009).

Agreement and the Altus Funds' investments in PPCN, suggesting that questions regarding the validity and application of the Arbitration Clause are for the arbitrator in the first instance.

As explained above, parties can delegate questions of arbitrability where there is clear and unmistakable evidence of agreement to do so. In *Brennan v. Opus Bank*, the Ninth Circuit held that incorporation of the American Arbitration Association ("AAA") Rules into an arbitration agreement "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." 796 F.3d 1125, 1130 (9th Cir. 2015). In dicta, the *Brennan* court noted that there is no requirement that the parties be sophisticated or that the contract be a commercial contract before a court may conclude that incorporation of the AAA Rules is clear and unmistakable evidence of intent to arbitrate arbitrability. *Id.* at 1130–31.

Here, the Arbitration Clause provides in part: "Note Purchaser further agrees that any dispute regarding this Agreement or Note Purchaser's investment in the Company . . . shall be resolved by arbitration which shall be the sole forum for resolution of any such disputes. . . . [A]ny such proceedings shall be brought . . . pursuant to the Rules and Code of Arbitration of the America [sic] Arbitration Association[.]" Neither party disputes that the reference to the "Rules and Code of Arbitration of the America Arbitration Association" is to the AAA Commercial Rules. Within those Rules, Rule 7(a) states that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Commercial Rule 7(a) (effective as of June 1, 2009).[4] This Rule delegates all jurisdictional questions, including arbitrability, to the arbitrator. Thus, by incorporating the AAA Rules into

---

[4] The October 1, 2013 version of AAA Commercial Rule 7(a) similarly states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

– 7 –

their arbitration agreement, the parties have clearly and unmistakably delegated the question of arbitrability to the arbitrator. *Brennan*, 796 F.3d at 1130; *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 974 (N.D. Cal. 2015) ("The Court finds that the Parties in this case clearly and unmistakably delegated the question of arbitrability to the arbitrator when they expressly incorporated the AAA Rules into their Agreement."). The Receiver's objections regarding the scope and validity of the Arbitration Clause must be referred to the arbitrator.[5]

### B.     Proper Venue for Arbitration

Having found that the parties agreed to refer the question of arbitrability to the arbitrator, the Court must now determine the proper forum for the arbitration. Defendants contend that arbitration should take place in Colorado pursuant to the terms of the Arbitration Clause (Mot. to Compel 2:6–8), while the Receiver argues that under Ninth Circuit law, arbitration must take place in the Southern District of California (Opp'n 12:4–7).

The resolution of this issue is not as clear-cut as it may seem. The problem stems from language within the FAA that, in certain cases, leads to contradictory conclusions regarding the proper forum for arbitration. Section 4 of the FAA provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*." 9 U.S.C. § 4 (emphasis added). Here, the terms of the agreement call for arbitration in

---

[5] The Receiver requests that if the Court finds the Arbitration Clause applicable to the Notes, the Receiver be given leave to amend his Complaint to allege that the Arbitration Clause was procured by fraud. This request is misplaced, and in any event, would not change the Court's analysis. Here, the parties have clearly and unmistakably delegated questions regarding the existence, scope, and validity of the Arbitration Clause to the arbitrator in the first instance. Only if the Receiver were challenging the validity of the delegation provision itself would the Court address the Receiver's fraudulent inducement challenge. *See Brennan*, 796 F.3d at 1133 (citing *Rent-A-Center*, 561 U.S. at 72–74). He has not done so. Because the Receiver challenges the entire Arbitration Clause, rather than the delegation provision specifically, the validity and enforceability of the Arbitration Clause is a matter for the arbitrator. *Id*.

1  Colorado. However, § 4 also states that "[t]he hearing and proceedings, under such
2  agreement, *shall be within the district in which the petition for an order directing*
3  *such arbitration is filed.*" 9 U.S.C. § 4 (emphasis added). Here, that district is the
4  Southern District of California. Thus, the plain language of the FAA presents a
5  dilemma where the terms of the arbitration agreement provide for arbitration in one
6  location (here, Colorado), but the motion to compel was filed in a different location
7  (here, the Southern District of California).

8        The Ninth Circuit resolved this dilemma in a 1941 decision in *Continental*
9  *Grain Co. v. Dant & Russell*, 118 F.2d 967 (9th Cir. 1941). In *Continental Grain*, the
10 court held that the right of arbitration is limited to the district in which the motion to
11 compel is filed. *Id*. at 968–69. The *Continental Grain* court explained that because
12 private arbitration agreements could not be enforced prior to the passage of the FAA,
13 section 4's requirement that arbitration be held in the district in which the motion to
14 compel was filed should be read as a condition that Congress placed on the right to
15 enforce private arbitration agreements in federal court. *Id*. at 969. More recent Ninth
16 Circuit decisions have indirectly confirmed the *Continental Grain* holding, *see, e.g.*,
17 *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781, 785 (9th Cir. 2001)
18 (stating that "by its terms, section 4 . . . confines the arbitration to the district in which
19 the petition to compel is filed"), and district courts in this Circuit regularly find that
20 section 4 of the FAA limits a court to ordering arbitration within the district in which
21 the petition to compel was filed. *Bencharsky v. Cottman Transmission Sys., LLC*, 625
22 F. Supp. 2d 872, 883–84 (N.D. Cal. 2008) (holding that *Continental Grain* required
23 the court to compel arbitration in the Northern District of California even though the
24 parties designated Pennsylvania as the forum for arbitration); *Homestead Lead Co.*
25 *of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131 (N.D. Cal. 2003) (following
26 *Continental Grain* and compelling arbitration in the Northern District of California
27 even though the parties designated Missouri as the arbitration forum), *but see*
28 *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084 (D. Haw. 2011) (opting

1 to transfer the case to the forum specified in the parties' arbitration agreement, rather than grant the motion to compel, because *Continental Grain* would have required the court to override the parties' contractually-designated arbitration forum).

To be sure, there are drawbacks to the Ninth Circuit's interpretation of section 4. Foremost among them is that a party may avoid arbitrating in the agreed upon forum simply by filing suit in a different district. As the Seventh Circuit noted, requiring arbitration to be held in the district in which a motion to compel is filed "could lead to the parties racing to different courthouses to obtain what each thinks is the most convenient forum for it, in disregard of its contractual obligations." *Snyder v. Smith*, 736 F.2d 409, 419–20 (7th Cir. 1984). For this and other reasons, other circuits have rejected the Ninth Circuit's approach and instead have held that a district court lacks authority to compel arbitration in its own district if the arbitration agreement specifies a different district. *See, e.g.*, *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005) (outlining approaches of various circuit courts of appeal). This approach gives primacy to the parties' contractually-designated arbitration forum.

Although skepticism of the *Continental Grain* approach is fair, the case remains controlling authority in this Circuit. *Homestead Lead Co.*, 282 F. Supp. 2d at 1144 ("Absent new guidance from the Ninth Circuit . . . the court is precluded from ordering arbitration in the contractually-designated forum[.]"). Thus, the Court is limited to ordering arbitration in the district in which the motion to compel was brought—that is, the Southern District of California. Accordingly, the Court grants Defendants' motion to compel arbitration, but will require arbitration proceedings to be initiated in the Southern District of California.

**C.     Motion to Transfer Venue under 28 U.S.C. § 1404(a)**

Finally, Defendants request that if the Court does not compel arbitration in Colorado, the Court transfer the case to the District of Colorado pursuant to the forum selection clause in the Subscription Agreement. (Mot. to Compel 9:17–10:14.) The

– 10 –

Receiver argues that transferring the case to the District of Colorado would dissipate the assets of the receivership estate, leaving less funds available to the creditors and defrauded investors. (Opp'n 10:24–28.)

Under 28 U.S.C. § 1404(a), a party may seek to transfer a case "to any other district or division where it might have been brought or . . . to which all parties have consented." In considering a motion to transfer under § 1404(a), the court considers public factors relating to "the interest of justice" and private factors relating to "the convenience of parties and witnesses," and decides whether the balance of factors favors transfer. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013).

However, the analysis changes where a party brings a § 1404(a) motion based on a valid forum selection clause.[6] Where, as here, a § 1404(a) motion is premised on a valid forum selection clause, the court disregards entirely the plaintiff's choice of forum and the parties' private interests, and instead considers only public interest factors. *Id.* at 581–82. Such factors may include the administrative difficulties flowing from court congestion and any local interest in the controversy. *Id.* at 581, n.6 (citation omitted). In *Atlantic Marine*, the Supreme Court emphasized that public interest factors will "rarely" defeat a transfer motion, and that "forum-selection clauses should control except in unusual cases." *Id.* at 582. Plaintiff bears the burden of showing that transfer to the contractually-designated forum is unwarranted. *Id.* at 581.

The Court finds this is the rare and unusual case where public interest factors defeat transfer to the contractually-designated forum. First, transferring this case to the District of Colorado would run counter to the core purpose of a federal

---

[6] The Receiver argues unconvincingly that the forum selection clause is "irrelevant to this dispute." (Opp'n 12.) This falls far short of the requisite "strong showing" needed to find a forum selection clause invalid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Therefore, the Court finds the forum selection clause valid and proceeds accordingly.

– 11 –

receivership—to preserve assets for the benefit of creditors and defrauded investors. *See SEC v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986) ("The primary purpose of allowing courts to establish receiverships in securities fraud actions is to prevent further dissipation of the assets of the defrauded investors[.]"). As the Receiver correctly notes, an order by this Court directing the parties to litigate or arbitrate this case in Colorado would increase the expense and burden on the Receiver and thereby decrease the funds available to investors and creditors. The Receiver has been duly appointed to serve an important public function; forcing him to incur expenses that would ultimately be drawn from assets of the receivership estate would substantially undermine that function.

Second, the Southern District of California has a strong local interest in this controversy. The SEC Enforcement Action from which this case stems was filed in this District. The Receivership Entities' principal places of business are in this District. The largest concentration of defrauded investors is in this District. The Court raises these points not to suggest this District is a more convenient forum[7], but rather to emphasize that the fallout and damage from the alleged fraudulent conduct is overwhelmingly concentrated in this District, as opposed to the District of Colorado. Under the circumstances presented here, the Court finds that this District's interest in protecting creditors and local investors substantially outweighs Colorado's interest in regulating Defendants' conduct.

In sum, although public interest factors will only rarely defeat a § 1404(a) motion to transfer based on a forum selection clause, the Court finds that the relationship of this case to the Total Wealth Management receivership proceeding, the need to protect and preserve the assets of defrauded investors, and the strong local interest in the controversy, demonstrate that a transfer to the contractually-designated

---

[7] "Convenience of parties and witnesses" is a private interest consideration that is irrelevant to a § 1404(a) analysis involving a forum selection clause. *Atlantic Marine*, 134 S. Ct. at 581–82.

forum of Colorado is unwarranted.

**D.     Stay or Dismissal**

The FAA provides that when the claims asserted by a party are "referable to arbitration," the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, "[w]here an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action." *Hopkins & Carley, ALC v. Thomson Elite*, No. 10–CV–05806–LHK, 2011 WL 1327359, at *8 (N.D. Cal. Apr. 6, 2011).

Here, the threshold issue of arbitrability has yet to be determined. Thus, since there is at least a possibility the arbitrator may find the claims unsuitable for arbitration, the Court will stay rather than dismiss this case. *Capelli Enters., Inc. v. Fantastic Sams Salons Corp.*, No. 5:16-cv-03401-EJD, 2017 WL 130284, at *5 (N.D. Cal. Jan. 13, 2017).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' motion to compel arbitration and **STAYS** further judicial proceedings pending completion of arbitration. Arbitration proceedings will be initiated in the Southern District of California.

The parties are instructed to submit a joint status report to the Court within ninety days of the date of this Order, and additional joint status reports every ninety days thereafter, apprising the Court of the status of the arbitration proceedings. Upon completion of the arbitration proceedings, the parties shall jointly submit to the Court, within fourteen days, a report advising the Court of the outcome of the arbitration, and a request that the case be dismissed or reopened.

The Clerk is instructed to administratively close the file. *Dees v. Billy*, 394 F.3d 1290 (9th Cir. 2005) (holding that an order administratively closing a case removes the case from the court's active docket, but has no jurisdictional effect).

//

1  //

2  //

3  **IT IS SO ORDERED**.

4  **DATED: March 29, 2017**

Hon. Cynthia Bashant
United States District Judge